**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

| | |
|---|---|
| **COMBINED PUBLIC COMMUNICATIONS, LLC** 100 Aqua Drive Cold Spring, Kentucky 41076 and **PRODIGY SOLUTIONS INC.** 6000 Midlantic Drive, Suite 415N Mount Laurel, New Jersey 08054  **Plaintiffs,** v. **GRISSOM COMMISSARY SUPPLY, INC. d/b/a CARE A CELL** 1613 Moscow Avenue Hickman, Kentucky 42050 and **JOINTACCOUNTS, LLC** 209 N. Lindell Street Martin, Tennessee 38237  **Defendants.** | **Civil Action No.** 5:26-cv-87-BJB  **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Combined Public Communications, LLC ("CPC") and Prodigy Solutions Inc. ("Prodigy") (collectively, "Plaintiffs") file this Complaint for Patent Infringement against Defendants Grissom Commissary Supply, Inc. d/b/a Care A Cell ("Care A Cell") and JointAccounts, LLC ("JointAccounts") (collectively, "Defendants") and allege and state as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, of U.S. Patent No. 11,330,436 ("the '436 Patent"), owned by Prodigy and licensed to CPC under an exclusive license. Plaintiffs assert the '436 Patent against Defendants for, *inter alia*, making, using, offering to sell, selling, and/or importing products, systems, or services practicing the subject matter claimed in the '436 Patent.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff CPC is a Delaware limited liability company with its principal place of business at 100 Aqua Drive, Cold Spring, Kentucky 41076.

3.      Plaintiff Prodigy is a Delaware corporation with its principal place of business at 6000 Midlantic Drive, Suite 415N, Mount Laurel, New Jersey 08054.

4.      Upon information and belief, Defendant Care A Cell is a Kentucky corporation with its principal office address at 1613 Moscow Avenue, Hickman, Kentucky, 42050.

5.      Upon information and belief, Defendant JointAccounts is a Tennessee limited liability company that is registered to do business in Kentucky, with its principal office address at 209 N Lindell Street, Martin, Tennessee, 38237.

6.      This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Upon information and belief, Defendant Care A Cell uses at least the following publicly available website to transact business: https://careacell.jointaccounts.com, which is linked with and is a subdomain of Defendant JointAccounts' website, https://jointaccounts.com. Care A Cell's website states that it is "powered by JointAccounts" and directs users to call "JointAccounts automated phone line." With respect to the communications system and/or services that are the

2

subject of this Complaint, Care A Cell's website also identifies JointAccounts ("JointAccounts is here to make sure distance doesn't keep you apart from your loved ones. Our dedicated communication services for correctional institutions ensure that you can always share moments, big or small, with family and friends.").

8. Upon information and belief, Defendant Care A Cell is an agent and/or alter ego of Defendant JointAccounts, which acts in concert with JointAccounts and at its direction to provide commissary services, including inmate care packages and/or communications services, to at least the detention centers located in the following counties in Kentucky: Webster County, Fulton County, Hopkins County, and Taylor County. Upon information and belief, JointAccounts has the right and ability to direct or control Care A Cell's actions, and Care A Cell is authorized to act on behalf of JointAccounts to provide services in Kentucky.

9. Upon information and belief, the president of Defendant Care A Cell is Michael Lynn Grissom. Upon information and belief, Michael Lynn Grissom resides at the same address as the registered address of Defendant Care A Cell, 1613 Moscow Avenue, Hickman, Kentucky, 42050. Upon information and belief, Michael Lynn Grissom is also a member of JointAccounts, LLC. Upon information and belief, Defendant JointAccounts resides in the states of its members, including Kentucky.

10. This Court has personal jurisdiction over Defendant Care A Cell at least because Care A Cell is incorporated and registered to do business in Kentucky and has its principal office in this District. Furthermore, this Court has personal jurisdiction over Care A Cell because, among other things, Care A Cell has transacted business, contracted to supply services or goods, has caused and continues to cause tortious injury, and has committed and continues to commit acts of patent infringement in Kentucky, including in this District.

11.     This Court has personal jurisdiction over Defendant JointAccounts at least because, on information and belief, JointAccounts resides in, has registered to do business, has transacted business, has contracted to supply services or goods, has caused and continues to cause tortious injury, and has committed and continues to commit acts of patent infringement in Kentucky, including in this District. JointAccounts has thereby engaged in continuous, systematic, and substantial activities within the Commonwealth of Kentucky and has thereby established at least minimum contacts with the Commonwealth of Kentucky. Pursuant to KRS 454.210(2), this Court may exercise personal jurisdiction over JointAccounts consistent with the Constitution of Kentucky and the Constitution of the United States.

12.     Venue is proper in this District under 28 U.S.C. § 1400(b) at least because, among other things, on information and belief, each Defendant resides in this District, each Defendant is subject to personal jurisdiction in this District, each Defendant or its agent has a regular and established place of business in this District, each Defendant has caused and continues to cause tortious injury, and each Defendant has committed and continues to commit acts of patent infringement in this District.

## STATEMENT OF FACTS

### Plaintiffs

13.     Plaintiff CPC is a leader in connecting friends, families, and others to individuals incarcerated in several jails, prisons, and detention centers around the country. Among other services, CPC provides communication services that allow inmates (or "residents") to communicate with outside parties in a convenient, efficient, and secure manner, including CPC's proprietary "Chirping" service that enables real-time text messaging between inmates and their loved ones.

14.    In July 2023, CPC entered into a license agreement with Prodigy, wherein CPC obtained license rights to practice the '436 Patent on an exclusive basis within the U.S. corrections industry, subject to Prodigy's rights to practice the '436 Patent. CPC practices the '436 Patent at least via its Chirping service.

15.    Plaintiff Prodigy is the U.S. corrections industry's only single-source provider of inmate communications and commissary technology. Among other services, CPC provides Secure Two-Way Communication technology, including associated software and devices, comprising an integrated platform that manages essential secure facility communications technology and data, including for phones, video, and messaging. Prodigy is the owner of the '436 Patent and practices the '436 Patent at least via its Secure Two-Way Communication service.

16.    CPC and Prodigy each contract with governmental entities responsible for operating correctional facilities in the U.S. to provide telecommunications services to inmates. In accordance with such contracts, Plaintiffs provide and/or install respective software, hardware, devices, and/or other equipment that enable inmates to engage in secure communications with outside parties. The governmental entities and Plaintiffs, respectively, typically receive a percentage of revenues collected based on fees charged for inmate communications with outside parties enabled by Plaintiffs' respective services. CPC, for example, entered into an agreement with the Webster County Detention Center to be the exclusive provider of, among other things, all inmate communications and communication devices, including but not limited to phone calls and messaging communications.

17.    Inmate communications from U.S. correctional facilities to outside parties may be performed in conjunction with one or more of tablets, kiosks, wall-mounted devices, or other telecommunications devices that are accessible to inmates for securely communicating with

outside parties. Each communication typically costs a certain amount and thus an inmate generally needs funds within his or her respective account with the secure facility to initiate or receive a communication, such as a text message.

18.     Security in two-way communications between inmates and outside parties is critical for corrections facilities given the risks to inmates, facility personnel, and the public safety in the face of otherwise-unregulated communications. Accordingly, outside communications from or to residents do not occur in the same way as between two outside parties. Residents typically do not own their own mobile devices within the facilities or carry telecommunications service plans accessible or usable from within the facilities.

19.     The necessary security and regulations for resident communications with outside parties thus present challenges in terms of telecommunications infrastructure. Among others, these challenges stem from the facts that residents do not have their own devices, existing residents leave facilities and new residents enter facilities, facilities do not generally have their own robust secure telecommunications infrastructure, and facilities do not have access to unlimited phone numbers or devices. As discussed below, the '436 Patent solved these challenges and more.

**The Asserted Patent**

20.     The United States Patent Office duly and legally issued the '436 Patent, entitled Secure Two-Way Communications, on May 10, 2022, and names James B. Hartman as the inventor. Attached as Exhibit A is a true and correct copy of the '436 Patent.

21.     The '436 Patent presented a novel and nonobvious technological innovation involving a "system and method for enabling two-way communication between a resident of a secure facility (inmate, patient, suspect, etc.) and an outside party utilizing system logic to create

communication channels transported over a shared set of telephone numbers." '436 Patent, Ex. A, col. 1 ll. 9-13.

22.    According to the '436 Patent, "[c]ommon communication systems employed in secure facilities are largely based on outbound only traditional telephone calls." *Id.* col. 1 ll. 30-32. However, "[i]t is desirable to increase communication for incarcerated individuals as a means for rehabilitation and re-introduction into society." *Id.* col. 1 ll. 37-39. The patent explains that "[i]n a secure facility, the process of managing two-way communications creates a significant challenge," as, typically, devices are "shared among many residents," residents "do not have a landline or cell phone number," residents do "not have a cell phone account," and residents do "not have the means to receive inbound SMS messages or Video calls." *Id.* col. 1 ll. 50-57.

23.    To overcome these challenges, the inventor developed an innovative system that "utilize[s] a small set of telephone numbers or short codes to provide two-way communications for many residents in a secure facility." *Id.* col. 1 ll. 61-66. The inventor recognized the problems inherent in secure facilities, including the fact that only a limited number of phone numbers can be assigned and maintained without incurring significant expense, and instead residents can use the numbers accessible to the secure facility "to communicate with contacts outside the secure facility using a variety of shared devices" without needing to issue each resident a phone number or require residents "to own their own devices or have a dedicated cellular account." *See id.*, col. 2 ll. 3-61. This invention thus "create[s] a bridge for two-way communication where a resident does not have a dedicated telephone number, cell phone or any other dedicated communication device." *Id.* col. 2 ll.6-8.

24.    Furthermore, the technological innovations of the '436 Patent comprise significant novel and inventive improvements over pre-existing systems. The '436 Patent teaches a secure

management system facilitating secure communications links that integrates with existing corrections facilities infrastructures. It is also a targeted solution to a unique problem associated specifically with the corrections industry.

**Defendants' Infringing Systems and Services**

25.    It is believed that Defendants' systems and services are provided in at least corrections facilities in Webster County, Fulton County, Hopkins County, and Taylor County Kentucky. Defendants each and/or jointly provide a communications system and/or service that is installed and accessible online, via a mobile app, over computing and/or mobile devices, and/or kiosks within facilities that enable residents of the facility to engage in two-way communications with non-residents via text messages, phone calls, and/or video calls (collectively, "Accused Product").

26.    It is believed that, since at least prior to the date of this Complaint, the Accused Product was made, offered for sale, sold, and/or used within the Kentucky County corrections facilities identified in the preceding paragraph. Such activities have been performed without authorization from Prodigy or CPC or license to the '436 Patent.

27.    It is believed that Defendants' Accused Product is made, sold, offered for sale, used, and/or imported by each Defendant either on its own or on behalf of, or as an agent of, the other Defendant and/or jointly by or on behalf of both Defendants.

28.    Both Defendants' websites refer to communication services for correctional institutions, including voice calls, video calls, and text messages. *See, e.g.*, https://careacell.jointaccounts.com/communications; https://jointaccounts.com/. Defendant Care A Cell's web address includes "jointaccounts" in the address and refers to Defendant JointAccounts in multiple places. Defendant JointAccounts' website refers to secure inmate

communication services, comprehensive software solutions relating thereto, and integrated kiosks relating thereto. *See generally* https://jointaccounts.com/ (including "Products" and "Solutions" tabs).

29.    It is believed that, either or both of Defendant JointAccounts and Defendant Care A Cell provides the Accused Product to customers, including the Kentucky County corrections facilities identified herein, either on each's own behalf or on behalf of, or as agents of, each other. It is believed that Michael Lynn Grissom, president of Care A Cell and member of JointAccounts, is directly involved in such activities on behalf of either and/or both Parties in such activities.

<u>COUNT 1</u>

**PATENT INFRINGEMENT OF THE '436 PATENT**

30.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

31.    The '436 Patent is valid and enforceable. The combination of elements described and claimed in the '436 Patent was unknown in the prior art and provided significant advantages over existing systems. The '436 Patent's claims are directed to technological advancements addressing technical problems in enabling two-way communications for residents of a secure facility and outside parties by employing novel elements, including limitations directed to the use of a specific arrangement of system components, devices, and/or identifiers associated with the claimed communication technology. Such elements involve novel secure management systems and enable secure communications links that integrate with complex corrections facility infrastructures. The advancements described in the '436 Patent are also narrowly tailored to challenges specific to the corrections facilities industry.

32.    It is believed that Defendants have been and are directly infringing one or more claims of the '436 Patent by making, using, selling, or offering for sale in the United States, or

9

importing into the United States, including within this judicial district, the Accused Product in violation of 35 U.S.C. § 271(a), whether literally or under the doctrine of equivalents. Defendants' infringement includes but is not limited to the Accused Product. A claim chart comparing the Accused Product to Claim 4 of the '436 Patent is attached as Exhibit B.

33.    It is believed that Defendants have been and are inducing infringement of the '436 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Product that embodies the invention claimed in the '436 Patent, including in violation of 35 U.S.C. § 271(b).

34.    It is believed that Defendants have been and are contributing to the infringement of the '436 Patent by making, using, selling, or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing the invention of the '436 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).

35.    Defendants' infringement has been, and continues to be knowing, intentional, and willful at least as of the date of this Complaint.

36.    Defendants' acts of infringement of the '436 Patent have caused and will continue to cause Plaintiffs immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiffs have no adequate remedy at law.

37.    In addition to an injunction and/or to the extent an injunction is not awarded, Defendants' acts of infringement of the '436 Patent have caused and will continue to cause Plaintiffs damages as a direct and proximate result of Defendants' infringement for which Plaintiffs are entitled to compensation pursuant to 35 U.S.C. § 284 including for reasonable

royalties, lost profits, enhanced damages, and/or any other available monetary damages, including for past damages.

38.    This case is exceptional and, therefore, Plaintiffs are entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

39.    Plaintiffs have complied with the provisions of 35 U.S.C. § 287(a) and/or such provisions are not implicated here.

**WHEREFORE**, Plaintiffs pray for judgment in their favor with respect to the causes of action set forth above and request that relief be granted as follows:

A.    Judgment against Defendants as to infringement of one or more claims of the '436 Patent.

B.    That the Defendants be preliminarily and permanently enjoined from making, selling, offering to sell, using, or importing the Accused Product.

C.    Judgment against Defendants for money damages sustained as a result of Defendants' infringement in an amount to be determined at trial, including enhanced damages due to, for example, Defendants' willful infringement of the '436 Patent.

D.    An accounting for infringing activities not presented at trial and an award by the Court of additional damages for any such infringing activities.

E.    An award of pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein.

F.    Declaring this case exceptional and awarding Plaintiffs reasonable attorney fees pursuant to 35 U.S.C. § 285; and

G.    Awarding such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Nicholas J. Pieczonka*
Nicholas J. Pieczonka (94130)
Taft Stettinius & Hollister LLP
50 E. RiverCenter Blvd., Suite 850
Covington, KY 41011
Phone: (513) 357-9603
Fax: (513) 381-2838
npieczonka@taftlaw.com

Darrell W. Stark (*pro hac vice* anticipated)
Taft Stettinius & Hollister LLP
301 E. 4th Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
dstark@taftlaw.com

*Attorneys for Plaintiffs Combined Public Communications, LLC & Prodigy Solutions Inc.*